MEADE ET AL. *v.* STATE

[No. 31, October Term, 1951.]

*Decided December 5, 1951.*

*Rehearing denied January 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Sol C. Berenholtz* for the appellants.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *Charles E. Orth, Jr., Assistant State's Attorney,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from a judgment and sentence of the Criminal Court of Baltimore, where Judge Sherbow, sitting without a jury, found the appellants guilty on certain counts of an indictment charging them jointly with violating Article 27, Sec. 291, of the Code of Public General Laws, and sentenced each of them to pay a fine of $1,000.00, and to serve one year in the Maryland House of Correction. The indictment contained fifteen counts. At the conclusion of the State's case, the appellants moved for directed verdicts and, when these motions were overruled, declined to offer testimony and rested their case. The appeal here is based upon the allegation that there was absolutely no proof of the essential averments of the indictment, and the verdict of the trial court was therefore clearly erroneous. The sentences imposed were general, so that if the evidence is sufficient to support a verdict under any of the counts of the indictment, the judgments will have to be affirmed.

The 12th count of the indictment alleges that the appellants "at the City aforesaid, unlawfully did receive and become the depository of certain money, bet, wager, thing and consideration of value to be bet, gambled and wagered * * * upon the result of a certain race, * * *". The 14th count alleges that the appellants "at the City aforesaid, unlawfully did forward certain money, bet, wager, thing and consideration of value to be bet, gambled and wagered * * * upon the result of a certain race, * * *". The appellants earnestly contend that there is no evidence to show that they violated either of these counts in the City of Baltimore, and therefore they could not be found guilty in the Criminal Court.

The evidence shows that appellants had been under observation by the police since sometime in August, 1950. On two separate days in February, 1951, they were observed in Read's drug store, located in the 3500 block of South Hanover Street, which is quite close to the Anne Arundel County line. After leaving the store, they drove down Hanover Street in Meade's automobile to 167 Meadow Road, which is in Anne Arundel County. This was before 12 o'clock noon, and they remained in that house until shortly before 6 o'clock in the evening, when they came out, got into Meade's car and drove back into the city. They had rented a room at 167 Meadow Road for $25.00 a week, and, with the permission of the landlord, they had a telephone installed in that room, although the landlord already had a telephone there, so that there were two 'phones. The landlord testified that they came in anywhere around 11 or 12 o'clock each day and they left between 5 and 6 o'clock. Both of the appellants rented the room, and the appellant Meade paid the rent. The police secured a search warrant on March 2, 1952, from Chief Judge Smith of the Supreme Bench of Baltimore City, authorizing the search of Meade's automobile, and to seize any evidence of bookmaking operations found as a result of such search. The warrant was served about 6:15 P. M. on that day in the vicinity of the unit block of South Hilton Street.

Meade was driving the car, and Riley was sitting in the front seat. Riley was searched and nothing was found on him. The sergeant of police started to search Meade, who reached in his side pocket and gave him certain scratch sheets and betting slips. The slips contained the names of race horses which were entered and ran on that day. There were 89 slips, 43 in one handwritting, and 46 in another. They covered 1,022 bets and a total play of $4,257.00. The automobile had just come from Anne Arundel County.

These facts seem amply sufficient evidence for the court to find that the appellants were engaged in a bookmaking operation in Anne Arundel County where they received and noted bets made there by telephone. Whether it would be a proper finding that at least some of these many bets were made from nearby Baltimore City with its large population is not necessary for us to decide in this case, nor do we have to consider the question whether a bet telephoned from Baltimore to Anne Arundel County, and accepted by telephone, which acceptance must reach the person calling in Baltimore City, would be a bet made in Baltimore City. There are, we think, other grounds upon which these convictions must be upheld.

Appellants contend that since both the 12th and 14th counts, and the statute itself, refer to becoming the depository of and forwarding money, bets, wagers, things, and considerations of value "to be bet, gambled, or wagered" in order for a conviction to be upheld on these grounds, it must appear that a bet was to be made in Baltimore City. They contend that all of the evidence shows that any bets that were made had already been made, that the slips taken from the appellants show this to be so, and there is no evidence that there was anything to be done in the future in Baltimore City. However, the evidence also indicates that the appellants were conducting a place in Anne Arundel County where they were receiving bets by telephone, and where they were making notations of these bets when received. Bets taken over the telephone cannot be considered as com-

pleted transactions. At some time or some place, money must be put up to take care of these bets, and, if they are successful, money must be paid out to the winners. It was not necessary for the State to show exactly where this was to be done, but it did show that the appellants were in Baltimore City, having in their possession the slips which were necessary for the collection of the money bet, and for the payment of the winning wagers. Where that was to be done might have been at some central establishment, or at the homes of the appellants or in some place not even in Baltimore City. Nevertheless, the appellants had become the depository of bets which were not completed transactions, but were transactions yet to be completed, and they were in Baltimore City forwarding such incompleted bets to some unknown place. That is sufficient evidence, we think, to justify the submission of the case to the court, and we cannot find its decision that the appellants were guilty, clearly erroneous. *Lambert v. State,* 196 Md. 57, 67-68, 75 A. 2d 327, 332. *Edwards v. State,* 198 Md. 132, 151, 81 A. 2d 631, 639, and opinion on motion for re-argument in the last mentioned case, filed October 5, 1951, 198 Md. 152.

The appellant Riley made a separate motion at the outset of the case, and at the end of the entire case, which asked that the indictment against him be quashed because he was unlawfully arrested, and there was no evidence against him. The first reason would not be ground for quashing an indictment. Whether there was sufficient evidence to submit the case against him to the court is another question. We have already shown that while no slips were found on Riley's person, he nevertheless accompanied Meade on the days mentioned on his trips to Anne Arundel County, and he and Meade had both rented a room where the operation there was carried on. We think this was sufficient to permit a guilty verdict against him, as well as Meade, on the fourteenth count.

*Judgment affirmed with costs.*